1

2

3

4

5

6
**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

7

8

9  UNITED STATES OF AMERICA,          )     IN EQUITY NO. C-125-ECR-WGC
                                     )     Subproceedings: C-125-B
10       Plaintiff,                  )                     C-125-C
                                     )
11  WALKER RIVER PAIUTE TRIBE,       )     3:73-cv-00127-ECR-WGC
                                     )     3:73-cv-00128-ECR-WGC
12       Plaintiff-Intervenor,       )
                                     )
13  vs.                              )
                                     )     **Order**
14  WALKER RIVER IRRIGATION DISTRICT,)
    a corporation, et al.,           )
15                                   )
         Defendants.                 )
16  _____)
    MINERAL COUNTY,                  )
17                                   )
         Proposed-Plaintiff-Intervenor,)
18                                   )
    vs.                              )
19                                   )
    WALKER RIVER IRRIGATION DISTRICT,)
20  a corporation, et al.,           )
                                     )
21       Proposed Defendants.        )
    _____)
22

23       This litigation involves rights to and the administration of

24  the Walker River system.  Now pending are three objections by

25  Defendant Walker River Irrigation District ("WRID") to Orders of the

26  Magistrate Judge.

27

28

# I. Background

**A. C-125 and the Walker River Decree**

The Walker River is an interstate stream system that begins in California and flows into Nevada and through the Walker River Paiute Reservation ("Reservation"), just before ending in Walker Lake. (Pls. Status Report at 4 (3:73-cv-00125, #1054).) This litigation over rights to and administration of the Walker River system began in 1924, when the United States sued the WRID and others to quiet title to a federal reserved water right claim for the Reservation and to determine the relative rights to water of parties in Nevada and California. (Id.) The initial action by the United States led to a Decree entered by this Court which was "deemed to determine all of the rights of the parties to this suit and their successors in interest in and to the waters of Walker River and its tributaries as of the 14th day of April, 1936." (Id. at 5.) The Court retained jurisdiction "for the purpose of changing the duty of water or for correcting or modifying this decree; also for regulatory purposes." (Id. at 6.)

Additional claims have been brought by the United States, the Walker River Paiute Tribe ("Tribe"), and Mineral County. These additional claims have been designated as subproceedings C-125-B (3:73-cv-127) and C-125-C (3:73-cv-128). (Id.)

**B. Subproceeding C-125-B: Counterclaims and Cross Claims of the Tribe and the United States**

In C-125-B, the Tribe and the United States assert claims to federal reserved water rights for (1) Weber Reservoir; (2) lands restored and/or transferred to the Reservation after April 14, 1936;

2

and (3) groundwater associated with the entire Reservation.  (Id.)
The United States also asserts eight claims for federal reserved
water rights for other tribal and non-tribal federal interests in
the basin that were not addressed in the underlying C-125
litigation.

This subproceeding is still in the stage of service of process
on all existing claimants to water in the Walker River Basin.  (Id.
at 9.)  In an Order entered on October 27, 1992, the Court found
that "[i]n accordance with Rule 19, all [existing] claimants to the
waters of the Walker River and its tributaries must be joined as
parties to the claim" and served under Rule 4.  (1992 Order at 6,
3:73-cv-127 (#15-2804829); Pls. Status Report at 9 (#1054).)  The
Tribe and the United States are in the process of completing service
of their First Amended Counterclaims and a related service package
on water rights holders in the Walker River Basin, including
groundwater rights holders.  (Pls. Status Report at 9 (#1054).)

On April 18, 2000, the Court entered a Case Management Order
("CMO") that governs this subproceeding.  (Id.; CMO, April 18, 2000
(B-#108).)  The CMO bifurcated the claims related to the Tribe
("Tribal Claims") from the other claims made by the United States.
(Pls. Status Report at 9 (#1054).)  The CMO requires the United
States and the Tribe to effect service pursuant to Federal Rule of
Civil Procedure 4 on nine categories of persons and entities,
including successors to all water rights holders in the 1936 Decree
and holders of permits or certificates to pump groundwater in
specific sub-basins, and requires the parties to identify threshold
legal issues.  (Pls. Status Report at 9-10 (#1054); CMO (B-#108).)

3

The CMO provides that the list of threshold issues to be determined in the first phase of the action "will not be finally resolved and settled by the Magistrate Judge until all appropriate parties are joined."  (CMO at 9 ((B-#108); Pls. Status Report at 10 (#1054).) Magistrate Judge McQuaid also approved a set of documents to be included in a service package before the United States began its service efforts.  (Pls. Status report at 10 (#1054).)

In 2009, Magistrate Judge McQuaid withdrew from the case, and Magistrate Judge Leavitt was assigned.  In August and September 2011, Magistrate Judge Leavitt issued Orders addressing service issues regarding parties who have been served and a cut-off date for service.  Objections to these Orders are the subject of the upcoming hearing.

**C. Subproceeding C-125-C: Motion and Petition to Intervene by Mineral County**

Mineral County brought a claim asserting that the public trust doctrine creates an obligation, which takes priority over any appropriative water rights in the Walker River System, to restore and maintain Walker Lake's ecological health and recreational values and maintain the Lake's quantity and quality of water at a sufficient level.  (Pls. Status Report at 11-12 (#1054).)

On February 9, 1995, the Court ordered Mineral County to file and serve revised filings on all claimants to the waters of the Walker River and its tributaries pursuant to Rule 4.  (Feb. 9, 1995 (C-#19).)  In September 1995, the Court clarified the documents that Mineral County was required to include in its service effort, and reiterated that persons or entities that are served or waive

personal service, but do not appear and respond will be deemed to have notice of all subsequent filings with the Court. (Sep. 29, 1995 (C-#48); Pls. Status Report at 14 (#1054).)

**D. Settlement Efforts**

Court-ordered mediation and other settlement efforts have been pursued, but the parties have not been able to reach settlement. However, Plaintiffs indicate that with respect to the Tribal Claims,"[a] number of circumstances have changed over the past few years that have led the Tribe to believe a settlement may be possible." (Pls. Status Report at 18 (#1054).)

**E. Service Issues**

Plaintiffs have not yet completed service of process in the subproceedings.  (Id. at 21.) Plaintiffs submitted a proposed order to Magistrate Judge Leavitt to address treatment of successors-in-interest following *inter vivos* transfers and the death of a defendant. (Proposed Order (B-#1614, C-#516).)   WRID objected and submitted its own proposal. (Objections to Proposed Order (B-#1621).)  Plaintiffs modified their proposed Order, and in late August and early September 2011, Magistrate Judge Leavitt entered several Orders addressing various service issues (B-#1650, C-#542, B-#1656, C-#547).  WRID filed objections to each of the Orders, and on February 21, 2012, a hearing was held for oral argument by the parties.[1]

---

[1] While Chief Judge Robert C. Jones presided over the hearing held on February 21, 2012, Judge Edward C. Reed, Jr. issued this Order after consideration of the transcript of the hearing and the parties' briefings.

## II. Legal Standard

Magistrate judges are authorized to resolve pretrial matters subject to district court review under a "clearly erroneous or contrary to law" standard.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  "This subsection would also enable the court to delegate some of the more administrative functions to a magistrate, such as . . . assistance in the preparation of plans to achieve prompt disposition of cases in the court."  Gomez v. United States, 490 U.S. 858, 869 (1989).  Pretrial orders of a magistrate under 636(b)(1)(A) are not subject to de novo determination, and the reviewing court "may not simply substitute its judgment for that of the deciding court."  Grimes v. City & County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991).

As to dispositive motions, the district court must review any findings or recommendations by the Magistrate Judge de novo if objections are filed.  28 U.S.C. § 636(b)(1); Gomez, 490 U.S. at 868-69.  28 U.S.C. § 636(b)(1)(A) excepts eight categories of "dispositive" pretrial motions.  Gomez, 490 U.S. at 868.  These are motions for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.  28 U.S.C. § 636(b)(1)(A).

WRID argues that de novo review is appropriate here, stating that the Magistrate Judge's rulings have binding effects on successors-in-interest and therefore are dispositive.  In Gomez, the

Supreme Court found that jury selection is more akin to the precisely defined dispositive matters for which a *de novo* review procedure is appropriate.  490 U.S. at 873.  The Supreme Court based its finding on the fact that "[l]ike motions to suppress evidence, petitions for writs of habeas corpus, and other dispositive matters entailing evidentiary hearings, jury selection requires the adjudicator to observe witnesses, make credibility determinations, and weigh contradictory evidence."  Id. n. 27.

The CMO granted the Magistrate Judge broad authority to determine service issues in order to keep this case running as efficiently as possible.  We find that the Magistrate Judge's rulings in this case relate to those pretrial procedures and service issues directly authorized by the CMO and therefore should be reviewed under the clearly erroneous or contrary to law standard. The rulings did not involve evidentiary hearings or the need to observe witnesses, make credibility determinations, nor did they require the Magistrate Judge to decide the ultimate merits of any party's claim or defense.

### III. The Successor-in-Interest Order

**A. Background**

In both subproceedings, Magistrate Judge Leavitt entered identical Orders regarding the treatment of successors-in-interest following an *inter vivos* transfer from or the death of a served defendant.  (B-#1649, C-#540).  These identical Orders were later amended to include attachments omitted from the initial Orders.  (B-#1650, C-#542.)

In the Amended Order Concerning Service Issues Pertaining to Defendants Who Have Been Served ("Successor-in-Interest Order") (B-#1650, C-#542), Magistrate Judge Leavitt stated that Rule 25(c) does not require anything to be done after an interest is transferred. "The action may be continued by or against the original party, and the judgment will be binding on his successor-in-interest even though he is not named." (Successor-in-Interest Order ¶ 2 (B-#1650, C-#542).)  On that basis, Magistrate Judge Leavitt ruled that "where a defendant has been served in a subproceeding and subsequently sells or otherwise conveys a water right or portion of a water right subject to that subproceeding, a successor-in-interest need not be re-served, but will be bound by the results of this litigation." (Id. ¶ 2.)  Magistrate Judge Leavitt also ruled that once a defendant has been served, the burden of keeping track of *inter vivos* transfers of the defendant's water rights and substituting the defendant's successors-in-interest should be born by the defendant and its successor(s)-in-interest.  (Id. ¶ 3.)  Furthermore, Magistrate Judge Leavitt stated that a defendant and its successor-in-interest may move for substitution pursuant to Federal Rule of Civil Procedure 25(c) when water rights are transferred. (Id. ¶ 4.)

Magistrate Judge Leavitt also ruled that if a party dies and the claim is not extinguished, and no notice of death or motion for substitution is made on the record, the case may proceed to judgment with the original named parties.  (Id. ¶ 8.)  If a death is formally noted on the record, Plaintiffs or any other party or the decedent's representative and/or successor(s)-in-interest shall move for substitution of the proper successor-in-interest within 90 days of

such notice pursuant to Federal Rule of Civil Procedure 25(a).  (<u>Id.</u> ¶ 10.)  Absent service of a statement noting the death, "the case may proceed against the original named parties in that subproceeding and will bind any and all successors-in-interest."  (<u>Id.</u> ¶ 11.) Also, Plaintiffs "shall provide periodic notice of developments in these proceedings to other parties in this proceedings by mail and by publication as directed by further order of this Court."  (<u>Id.</u> ¶ 19.)  Finally, Magistrate Judge Leavitt ordered that Defendants "shall regularly provide updated water right ownership information to the Court and the Plaintiff Parties."  (<u>Id.</u> ¶ 20.)

WRID filed objections (B-##1652, 1653, C-##543, 544) to the Successor-in-Interest Order, and Plaintiffs have responded (B-#1674, C-#564).  Defendants Circle Bar N Ranch, LLC and Mica Farms, LLC joined (B-#1654, C-#545) in WRID's objections (B-##1652, 1653, C-#543, 544).

### B. Discussion

WRID strongly objects to the Magistrate Judge's ruling that successors-in-interest may be bound without being served.  It argues that the ruling stems from considering this action one *in rem* or *quasi in rem*, which it contends is a mistaken understanding of the case.  Furthermore, it argues that even if the Court has *in rem* jurisdiction over the original case, the Court "has never taken any jurisdiction over the regulation of groundwater" and therefore must acquire personal jurisdiction over groundwater users first.  WRID argues that anything less than service upon successors-in-interest would result in the possibility of the judgment being overturned at a later time.

9

1    WRID also objects to the Magistrate Judge's ruling that
2  defendants should bear the burden of keeping track of *inter vivos*
3  transfers of defendants' water rights and substituting defendants'
4  successors-in-interest.

5          1. In Rem Jurisdiction

6    While due process requirements apply regardless of whether a
7  case is characterized as *in rem* or *in personam*, because *in*
8  *rem* jurisdiction "is secured by the power of the court over the
9  *res*," the degree of notice and service of process required for a
10 judgment is less than in an *in personam* action.  <u>Tyler v. Judges of</u>
11 <u>the Court of Registration</u>, 55 N.E. 812, 812-14 (Mass. 1900).  This
12 Court has recognized this case is akin to an action *in rem*, as it
13 confirmed in directing the scope of service in C-125-C, where it
14 stated that "[t]his case is essentially an action in rem to quiet
15 title to property–that property being the water (or rather the right
16 to take the water) of the Walker River and its tributaries..." (Mar.
17 2, 1999 Order (C-#257)) (citing April 1, 1997 Minute Order at 2 (C-
18 #99) ("The instant action is in the nature of a suit to quiet title
19 to water rights; as such it is an action the subject of which is
20 real property.").)

21    In other cases, courts have recognized that water rights
22 adjudications should be treated as *in rem*.  "Suits to adjudicate
23 [water rights] are to quiet title to realty. . . . Such suits are
24 not in personam but in rem or quasi in rem."  <u>Sain v. Mont. Power</u>
25 <u>Co.</u>, 20 F. Supp. 843, 846 (D. Mont. 1937) (internal citations
26 omitted).  "[E]ven though quiet title actions are *in personam*
27 actions, water adjudications are more in the nature of *in rem*

28                                    10

1  proceedings." Nevada v. United States, 463 U.S. 110, 143-44

2  (1983).[2]  The Supreme Court was considering the Orr Ditch litigation

3  in which parties sought to adjudicate water rights to the Truckee

4  River for the benefit of both the Pyramid Lake Indian Reservation

5  and the Newlands Reclamation Project.  Id. at 110.  While the Court

6  acknowledged that Orr Ditch was an equitable action to quiet title

7  and therefore an *in personam* action, it was more in the nature of *in*

8  *rem* because "everyone involved in Orr Ditch contemplated a

9  comprehensive adjudication of water rights intended to settle once

10 and for all the question of how much of the Truckee River each of

11 the litigants was entitled to."  Id. at 143.  Therefore, the Supreme

12 Court stated that it agreed with the Court of Appeals' conclusion

13 that it would be manifestly unjust not to permit subsequent

14 appropriators to hold the Reservation to the claims it made in Orr

15 Ditch.  Id. at 144.  Any other conclusion "would make it impossible

16 ever finally to quantify a reserved water right."  Id.

17      Finally, we reject WRID's argument that groundwater users must

18 be treated differently at this stage.  WRID objects on the basis

19 that the Court has not assumed jurisdiction over groundwater in

20 Nevada or in California.  However, the Court has ordered that

21 groundwater users be served in accordance with the Federal Rules of

22 Civil Procedure.  While groundwater users may be treated differently

23

24 _____

25      [2] It was suggested at the hearing held on this matter that there
   are serious issues as to whether this action may properly be
26 considered *in rem*.  However, our further research and analysis lead
   us to conclude that while the claims in this case may be fairly
27 categorized as *in personam*, the action should still be treated as one
   *in rem*.  See Nevada v. United States, 463 U.S. at 143-44.

28                                    11

at a later stage, the Court finds that the current procedure of serving groundwater users is sufficient for this action to proceed.

### 2. Successors-In-Interest May Be Bound Without Being Served

Federal Rule of Civil Procedure 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."

In In re Bernal, the Ninth Circuit quotes a treatise that states:

> The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named. An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation.

207 F.3d 595, 598 (9th Cir. 2000) (quoting 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1958 (2d Ed. 1986)). The Ninth Circuit notes that the successor-in-interest in the case was not party to the original suit, but acquired whatever rights it may have in the property by virtue of assignment from a party to the original suit, and must therefore stand in its shoes with respect to all phases of the litigation. Id. at 598.

Successors-in-interest of defendants who have been served with notice of process should not be able to escape being bound by a judgment simply because of the transfer of the right. "Successors in interest of parties who are not adversaries in a stream

12

1  adjudication nevertheless are bound by a decree establishing
2  priority of rights in the stream." Nevada v. United States, 463
3  U.S. 110, 139 (1983).  "A person who is liable as a successor in
4  interest under the applicable substantive law may be bound by the
5  judgment even if no motion under Rule 25(c) is filed and the person
6  is not joined or substituted."  6-25 MOORE'S FEDERAL PRACTICE – CIVIL
7  §25.32.  "Persons acquiring an interest in property that is a
8  subject of litigation are bound by, or entitled to the benefit of, a
9  subsequent judgment, despite a lack of knowledge." Golden State
10 Bottling Co. v. Nat'l Labor Rels. Bd., 414 U.S. 168, 179 (1973).

11      As noted in the Restatement of Judgments, if successors-in-
12 interest are not bound by a judgment concerning property that is
13 transferred, "the stabilizing effect of a judgment concerning the
14 property could indefinitely be postponed by successive transfers."
15 Restatement (Second) of Judgments § 44 (1982).  Because of all these
16 reasons, the Magistrate Judge's statement that successors-in-
17 interest will be bound regardless of substitution is not clearly
18 erroneous, nor would we overturn on a de novo standard.  Ruling
19 otherwise would place an interminable burden on Plaintiffs to
20 continuously track down successors-in-interest after spending
21 decades serving water right holders, and would call into question
22 the stability of any judgment entered in the action.

23      WRID cites cases to argue that a court may not determine
24 whether an absentee is a successor-in-interest without providing the
25 absentee whose substitution is sought with an opportunity to be
26 heard.  See, e.g., Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc., 13
27 F.3d 69 (3d Cir 1993); PP, Inc. v. McGuire, 509 F. Supp. 1079

28                              13

(D.N.J. 1981).   Luxliner dealt with the question of how courts should decide Rule 25(c) motions in cases in which the parties dispute the substitution or joinder of a corporation.   Luxliner, 13 F.3d at 72.   The Third Circuit held that in such cases, due process requires notice and an opportunity to be heard. Id.   However, the Third Circuit noted that in most cases, Rule 25(c) "permits automatic continuation of a lawsuit against an original corporate party, although the outcome will bind the successor corporation" and that "joinder or substitution under Rule 25(c) does not ordinarily alter the substantive rights of parties but is merely a procedural device designed to facilitate the conduct of a case." Id. at 71-72. Therefore, we find that notice and an opportunity to be heard is only required by Luxliner when the party to be bound disputes its successor-in-interest status. Luxliner does not apply when a transferee to a water right in water rights adjudications is by definition a successor-in-interest.

The more problematic case that WRID cites is Pitt v. Rodgers, 104 F. 387 (9th Cir. 1900).   The Ninth Circuit ruled that when plaintiffs bring a case for a decree adjudging to plaintiffs the first right to use the waters of the Humboldt river, a purchaser after litigation begins cannot be bound without actual or constructive notice of the pendency of the action.   Id. at 389. Plaintiffs argue that Pitt is partially superseded by the subsequent adoption of Nevada's adjudication statute, and the Rule 4 service required in this case already exceeds the level of notice required

14

under both Nevada and California water law governing adjudications.[3]

In Pitt, the Ninth Circuit noted that under common law a purchaser

of real property involved in a pending action is bound by whatever

judgment the court might render in respect to his vendor's title.

Id. at 390.  Pitt was decided differently because the court was

interpreting Nevada's lis pendens statute which required notice of

the pendency of an action to be filed with the recorder of the

county when the title or possession of real property would be

affected.  Id.  WRID does not argue that there is an applicable lis

pendens statute in this case, and therefore Pitt should be

distinguished.  Instead, the common law rule binding purchasers of

real property to judgments on their vendor's title applies because

we found that water rights cases should be treated as if they are *in*

*rem*.

### 3. Successors-in-Interest Resulting from Deaths

    The same analysis applies with respect to successors-in-

interest resulting from deaths of original named parties.  In a case

dealing with the water rights of several thousand claimants, the

burden of keeping track of the deaths of any originally-served

parties and personally serving and substituting the successors is

heavy.  Federal Rule of Civil Procedure 25(a) provides that "[i]f a

---

[3] Plaintiffs analogize these proceedings to state adjudications in Nevada and California.  The procedures in those States provide for periodic notice by mail and publication and imposition  of a duty on claimants to keep the adjudicating authority informed of their current mailing address. Nev. Rev. Stat. §§ 533.095, 533.110, 533.150, 533.160, 533.165, 533.170(5); Cal. Water Code §§ 2526, 2527, 2529, 2551, 2553, 2555, 2577, 2604, 2650, 2701, 2753, 2754, 2756, 2759.  While these statutes are informative to the reasoning behind the Magistrate Judge's Orders, the reasons stated above are sufficient to affirm the Magistrate Judge's rulings.

party dies and the claim is not extinguished, the court may order substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative." If no suggestion of death is made to the court, the action may proceed against the originally named parties. <u>Ciccone v. Sec'y of Dept. of Health & Human Servs.</u>, 861 F.2d 14, 15 n. 1 (2d Cir. 1988).

<u>4. The Burden of Keeping Track of *Inter Vivos* Transfers and Substituting Successors-in Interest</u>

WRID argues that Magistrate Judge Leavitt shifted the burden of joining necessary parties to Defendants, rather than Plaintiffs. Magistrate Judge Leavitt stated that "[o]nce a defendant has been served in a subproceeding, the burden of keeping track of *inter vivos* transfers of the defendant's water rights in that subproceeding and substituting the defendant's successors-in-interest properly is born by the defendant and its successor(s)-in-interest."  (Successor-in-Interest Order ¶ 3 (B-#1650, C-#542).) The Federal Rules of Civil Procedure allow "any party" to make a motion for substitution.  To the extent that the Magistrate Judge's ruling limits Plaintiffs from bringing such a motion, it may be contrary to law.  However, it appears that the Magistrate Judge was merely ordering that the responsibility of substituting successors-in-interest will rest mainly with Defendants, without limiting the possibility of Plaintiffs bringing such motions.  As noted previously, a successor-in-interest via transfer or as a result of the death of a party need not be substituted to be bound by a judgment in a case of this nature, and the case may continue against the originally named parties if the Court is not alerted to the

transfer of rights.  Defendants may make a motion for substitution in such cases, and the Magistrate Judge's ruling does not improperly shift any burden because FRCP 25(a) or 25(c) allows any party to make such motions.

To the extent that WRID interprets the ruling to shift the burden of *initial* service to Defendants, that interpretation is incorrect.  Magistrate Judge Leavitt's ruling that successors-in-interest may be bound without substitution, coupled with previous Orders and the Federal Rules of Civil Procedure, all direct an understanding of the Order as being one in which Plaintiffs remain responsible for *initially* serving necessary defendants, but not solely responsible for substituting parties after initial service has been made.

### 5. Periodic Notice Requirement

The Magistrate Judge stated in the Successor-in-Interest Order that "[t]he Plaintiff Parties shall provide periodic notice of developments in these proceedings to other parties in this [sic] proceedings by mail and by publication as directed by further order of this Court." (Successor-in-Interest Order ¶ 19 (B-#1650, C-#542.)  WRID argues that this is contrary to law because it interprets the ruling to limit the notice required by the Federal Rules of Civil Procedure.  However, the Magistrate Judge merely ordered that Plaintiffs provide periodic notice of developments, without ruling that this is the only notice Plaintiffs are required to give.  As Plaintiffs concede, "[n]o one has suggested that proper service under Rule 5 should not be made by any party when proper and appropriate and consistent with other rulings of the Court.  The

17

1  Order addresses only successors and does not affect Rule 5 service

2  requirements on served parties."  (Response at 39 (B-#1674, C-

3  #564).)  At the hearing held on WRID's objections, the parties

4  agreed that our interpretation of the Magistrate Judge's ruling

5  would not be contrary to law and would be unobjectionable.

6       6. Requirement that Defendants Provide Regular Updates of

7  Water Rights Ownership

8       The Magistrate Judge ruled that Defendants "shall regularly

9  provide updated water right ownership information to the Court and

10  the Plaintiff Parties.  This information may be used to provide

11  notice of the pending proceedings to any new water rights owners."

12  WRID argues that while it will continue to provide annual

13  information it has been providing to the United States and to

14  Mineral County, the Successor-in-Interest Order is contrary to law

15  if it requires more.  It argues that information concerning

16  successors-in-interest is contained in public records and the burden

17  of examining those records cannot be shifted from Plaintiffs to

18  Defendants.  The CMO ordered the Magistrate Judge to:

19       consider and determine how, when, and at whose cost
         information regarding changes or modification in the
20       individuals or entities with such water rights claims
         shall be provided as between the parties and the
21       entities which receive information respecting any such
         changes, until service of process is complete on the
22       counterclaims.

23  CMO at 7-8 (B-#108).

24       Any concern over the scope of the Magistrate Judge's ruling may

25  be premature.  At the hearing, WRID argued that if all the

26  Successor-in-Interest Order required was for WRID to continue to

27  regularly provide updated water right ownership information, that

28                                    18

1  is, to continue to do what WRID has been doing, it has no objection.
2  So interpreted, the Magistrate Judge's ruling is not objectionable
3  to WRID and we so interpret it.

4          7. Due Process

5      WRID argues that Plaintiffs must perform Rule 4 service on all
6  successors who become readily ascertainable at any point during the
7  litigation.  The Magistrate Judge's ruling that parties *may* be
8  substituted, but do not need not be in order to be bound, is in
9  accordance with the law in cases of this nature.  Also notable is
10  that the Walker River Decree entered in the original case stated
11  that it binds all successors-in-interest, as it must, in order to be
12  effective.  The Decree stated that it was "deemed to determine all
13  of the rights of the parties to this suit and their successors in
14  interest in and to the waters of Walker River and its tributaries as
15  of the 14th day of April, 1936."  (Pls. Status Report at 5 (#1054).)

16      Requiring Plaintiffs to continually track successors-in-
17  interest and serve them would constitute an incredible burden, and
18  the Magistrate Judge's ruling gives fair consideration to that fact
19  and harmonizes with the law concerning substitution.

20

21          **IV. Service Cut-off Order Filed in C-125-B**

22      **A. Background**

23      The United States has mailed over 3,850 service packages and
24  personally served over 1,500 persons and entities in C-125-B.  (Pls.
25  Status Report at 23 (#1054).)   There are currently over 3,000
26  defendants in C-125-B.  (Id.)  Under the CMO, the list of threshold
27  issues for Phase I of the litigation cannot be resolved and

28                                    19

addressed until all appropriate parties are joined. (CMO at (B-#108).) Plaintiffs proposed that C-125-B address water rights in existence as of December 31, 2009. (Proposed Order Concerning Service Cut-off Date (B-#1613).) Plaintiffs clarified that the service cut-off date of December 31, 2009 was for the litigation of Phase I to resolve the Threshold Issues regarding the Tribal Claims. (B-#1639.)

On September 19, 2011, Magistrate Judge Leavitt issued the Service Cut-off Order, which states that the service cut-off date for Phase I of the Tribal Claims is December 31, 2009, and includes water rights in existence as of that date. (Service Cut-off Order (B-#1656).) WRID filed objections (B-##1663, 1664) to the Service Cut-off Order and the Tribe and the United States filed a response (B-#1673). Defendants Circle Bar N Ranch, LLC, and Mica Farms, LLC, joined (B-#1665) in WRID's objections (B-##1663, 1664).

**B. Discussion**

WRID objects to the Service Cut-off Order entered in C-125-B stating that "[t]he service cut-off date for Phase I of the Tribal Claims is December 31, 2009, and includes water rights in existence as of that date." (B-#1656.) As discussed before, in the CMO, the case was bifurcated and it was decided that threshold issues should be decided in Phase I of the Tribal Claims once service is concluded. (B-#108.) The CMO ordered that the Magistrate Judge "shall establish a schedule for completion of service of process which may be modified by further order from time to time as appropriate." (CMO at 7 (B-#108).) The CMO also directs that the threshold issues will be determined once service is completed. The

1  Magistrate Judge's ruling is not, as WRID suggests, a dispositive
2  matter, but rather part of the non-dispositive pre-trial procedure
3  specifically delegated to the Magistrate Judge via the CMO.

4      WRID argues that the Service Cut-off Order is dispositive
5  because it "appears to conclusively determine the disputed question
6  of whom [sic] is a proper party to this action by 'designat[ing] a
7  cut-off date respecting the defendants to be included in this
8  action.'" (WRID Objections to Service Cut-off Order at 8 (B-#1664).)
9  The Service Cut-off Order does not specifically disallow the
10 addition of new parties later.  It attempts to conclude decades of
11 service of process and comply with the CMO, which directed the
12 Magistrate Judge to establish a schedule for completion of service
13 of process.  The CMO states that the list of threshold issues for
14 Phase I "will not be finally resolved and settled by the Magistrate
15 Judge until all appropriate parties are joined."  (CMO at 9 (B-
16 #108).)  WRID has been arguing that even successors-in-interest must
17 be re-served.

18      Plaintiffs point out that Magistrate Judge McQuaid recognized
19 that there will be service of persons and entities whose water
20 rights are created near the cut-off date, and that there would have
21 to be a way to deal with "stragglers" but service could not go on
22 indefinitely.  (Response at 15 (B-#1673).) Practically, the service
23 cut-off date serves to move this litigation into the merits rather
24 than delaying it for an indefinite amount of time because of the
25 concern of water rights that may come into existence after the cut-
26 off date. The Order is not, therefore, clearly erroneous.
27 Furthermore, WRID also stated at the hearing that it agrees that

28

service is sufficiently complete to finalize the threshold issues and to move forward with them.  Therefore, the Service Cut-off Order shall be affirmed.

## V. 9/27/11 Order Filed in C-125-C

### A. Background

Mineral County has severed over 1,000 claimants and is nearing the end of the list of unserved claimants.  (Pls. Status Report at 25 (#1054).)  In 2008, Mineral County filed a service report requesting that the Court amend certain names in the caption, strike certain names from the caption and substitute other names in their stead, ratify service efforts for several proposed defendants, and clarify the status of service on several proposed defendants. (Mineral County Report (C-#479); Pls. Status Report at 25 (#1054).)

On September 27, 2011, Magistrate Judge Leavitt issued an Order Concerning Service Issues in C-125-C (C-#547) ("9/27/11 Order"), which granted Mineral County's Service Report (C-#479) requests. Specifically, Magistrate Judge Leavitt ordered that "the caption submitted as Exhibit C to Mineral County's Service Report (#479) is hereby approved as accurate and valid."  (9/27/11 Order at 1 (C-#547).)   Furthermore, Mineral County's requests to dismiss parties as set forth in its Service Report (C-#479) and in Exhibits 1 and 2 of Mineral County's Reply (#496) were granted.  (Id. at 1-2.) Magistrate Judge Leavitt also ordered that "the parties who remain to be served are those set forth in Exhibit 6 of Mineral County's Reply (#496)."  (Id.)

1  WRID filed objections (C-##552, 553) and Mineral County
2  responded (C-#563).  Circle Bar N Ranch, LLC, and Mica Farms, LLC
3  made a limited appearance to join (C-#554) in WRID's objections (C-
4  ##552, 553).

5  **B. Discussion**

6      1. Caption

7  The Magistrate Judge ruled that the caption submitted by
8  Mineral County is "approved as accurate and valid."  (9/27/11 Order
9  at 1 (C-#547).)  WRID objects on the basis that the Magistrate Judge
10  is limiting the parties to those included in the caption.  However,
11  Mineral County responds that the caption was submitted as a starting
12  point for further updates and "is meant only to reflect all previous
13  orders of the Court that added and dismissed parties."  (Response at
14  15 (C-#563).)  Nothing in the brief ruling in the 9/27/11 Order
15  limits the parties to those included in the caption, and this
16  objection should be overruled.  In addition, at the hearing, Mineral
17  County represented that it would be filing an updated caption, and
18  WRID withdrew its objection on that basis.

19      2. Substituting Parties

20  The Magistrate Judge ruled that "Mineral County's requests to
21  substitute parties as set forth in its Service Report (#479) and in
22  Exhibits 1 and 4 of its Reply (#496) are hereby granted."  (9/27/11
23  Order at 2 (C-#547).)  WRID objects on the basis that Mineral County
24  is actually adding parties and the Magistrate Judge is allowing
25  substitution instead.  It is unclear exactly what WRID's objection
26  is, but to the extent that WRID is concerned that these additional
27  parties need not be served, that is not the ruling that was made and

28                            23

1 Mineral County states that it has "never disputed that Plaintiffs
2 have the burden to substitute and serve, via Rule 4 service,
3 successors-in-interest to *unserved* water rights claimants."
4 (Response at 16 (C-#563).)  At the hearing, WRID withdrew its
5 objection on the basis that Mineral County represented that it will
6 serve substituted parties under Rule 4.

7          3. Further Service on Parties Who Have Already Been Served
8          The Magistrate Judge ruled that "Mineral County shall not be
9 required to make further service on parties who have already been
10 validly served, and for whom the court has already ratified
11 service."  (9/27/11 Order at 2 (C-#547).)  WRID interprets this
12 ruling to mean that Plaintiffs need not serve defendants with an
13 updated briefing schedule in the future.  While the Magistrate
14 Judge's ruling seems a bit unclear, Mineral County states that the
15 ruling was made with respect to served defendants who do not file
16 answers or file a notice of appearance as is required to receive
17 notice of further filings.  (Response at 17 (C-#563).)  While no
18 defaults will be entered in this case, defendants must still appear
19 in order to receive further notice of filings in this case.
20 Therefore, it appears that the Magistrate Judge's ruling only
21 concerns defendants who have been served and who need not be served
22 further because they failed to appear.

23          To the extent that WRID argues that no appearance is necessary
24 for further service, we disagree.  Mineral County has shown that
25 every service packet has included a waiver form or other notice that
26 if a party does not appear and respond to Mineral County's motion to
27
28                                    24

intervene, it shall be deemed to have notice of subsequent orders of the court.

There is an issue, however, over when parties had to appear in order to receive further notice of proceedings.  Initially, papers served on parties between 1995 and 2000 included various dates for when responses should be filed.  However, because serving parties in this action became such a lengthy process, one that has not yet concluded, the date for when responses should be filed was moved back or became outdated.  In 2000, Magistrate Judge McQuaid ordered (C-#327) that any remaining proposed defendants shall be served with papers directing the parties to file a Notice of Appearance within twenty days of service.  WRID argues that defendants served between 1995 and 2000 must be reserved with updated briefing schedules or a notice that they must appear in order to receive any subsequent orders or pleadings filed in the action.  We disagree.  While those defendants served between 1995 and 2000 may have been given dates to respond that subsequently were moved back, they were unequivocally given notice that any party who does not appear or respond shall be deemed to have notice of subsequent filings in the case.  Requiring Mineral County to reserve those defendants can only result in further delay.

### 4. Directive to Serve Parties Without Unnecessary Delay

The Magistrate Judge also ordered that "the parties who remain to be served are those set forth in Exhibit 6 of Mineral County's Reply (#496); and that said parties shall be served without unnecessary delay."  (9/27/11 Order at 2 (C-#547).)  WRID states that this is clearly erroneous because service should necessarily be

delayed until after the Court rules on these pending objections.  At
the hearing, WRID stated that in light of Mineral County's agreement
that further guidance from the court is necessary before service may
commence, there is no real dispute over this objection, which is
essentially moot.

### 5. Notices of Death

The Magistrate Judge ruled that "the estate and successors-in-
interest of a deceased party bear the burden of filing and serving a
Notice of Death pursuant to Fed. R. Civ. P. 25(a) in the event of a
party's death."  WRID objects again to this portion, which was
addressed earlier.  Rule 25(a) allows any parties to file a notice
of death, and the Magistrate Judge likely did not intend to prohibit
any party from filing such notices.  As part of his duties of case
management, the Magistrate Judge sought to put defendants on notice
that he determined that the cost and efficiency analysis indicates
defendants are in a better position to file notices of death, as the
Supreme Court found proper in class action suits under certain
circumstances, and that defendants should do so when necessary or
desirable.  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 355-56
(1978).

### 6. Dismissal of Certain Parties

The Magistrate Judge ruled that "Mineral County's requests to
dismiss parties as set forth in its Service Report (#479) and
Exhibits 1 and 2 of Mineral County's Reply (#496) are hereby
granted."  (9/27/11 Order at 1-2 (C-#547).)  WRID objects only to
the dismissal of Michael Sherlock.  WRID states that its records
indicate that Sherlock continues to hold water rights pursuant to a

deed recorded as Document No. 128422 on October 27, 1989 with Lyon County Recorder.  (Objections at 20 (C-#553).)   Mineral County responds that it "hereby withdraws its request to dismiss Michael Sherlock from this case.  Mineral County will serve Mr. Sherlock pursuant to Rule 4."  (Response at 24 (C-#563).)   Therefore, we should overturn the Magistrate Judge's ruling only with respect to Michael Sherlock.

## VI. Conclusion

**IT IS, THEREFORE, HEREBY ORDERED** that WRID's objections to the Successor-in-Interest Order (B-##1652, 1653; C-##543, 544) and WRID's objections to the Service Cut-off Order (B-#1663, 1664) are **OVERRULED**.  WRID's objections to the 9/27/11 Order (C-##552, 553) are **GRANTED IN PART AND OVERRULED IN PART**; granted with respect to the Magistrate Judge's dismissal of Michael Sherlock as a defendant, and overruled with respect to all other issues in the 9/27/11 Order.

DATED: April 23, 2012.

_____
UNITED STATES DISTRICT JUDGE