UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MONO COUNTY, *et al.*, | Case No. 3:73-cv-00128-MMD-CSD |
| Plaintiffs, | ORDER |
| v. | |
| WALKER RIVER IRRIGATION DISTRICT, *et al.*, | |
| Defendants. | |

I.    **SUMMARY**

This is a 'sub-file' in an over 100-year-old case regarding apportionment of the water of the Walker River, which begins in the high eastern Sierra Nevada mountains of California and ends in Walker Lake in Northern Nevada. *See United States v. Walker River Irrigation Dist.*, 986 F.3d 1197, 1199-1202 (9th Cir. 2021) ("*Remand Order*") (reciting the history of this sub-file); *see also* Google Maps, *Walker River*, https://goo.gl/maps/jJsuqbBJB7KbrBaW8 (last visited Jul. 28, 2022) (showing the river). Before the Court is Principal Defendants'[1] motion to dismiss Mineral County's Second Amended Complaint-in-Intervention (ECF No. 936 ("SACI")). (ECF Nos. 994, 996.)[2]

---

[1] "[T]he Walker River Irrigation District ("WRID"), Desert Pearl Farms, LLC, Peri Family Ranch, LLC, Peri & Peri, LLC, and Frade Ranches, Inc., Lyon County and Centennial Livestock, the Nevada Department of Wildlife ("NDOW"), the Schroeder Group, and Mono County." (ECF No. 994 at 4 n.1.)

[2] While docketed as two motions, Principal Defendants really only filed one motion. ECF No. 994 is the motion, and ECF No. 996 is the memorandum of points and authorities supporting the motion. Because the memorandum of points and authorities contains Principal Defendants' arguments and corresponding legal authority, the Court refers to ECF No. 996 as the Motion throughout this order and otherwise cites to ECF No. 996, not ECF No. 994. Mineral County filed a response to the Motion. (ECF No. 1051.) Principal Defendants filed a reply. (ECF No. 1060.) As Principal Defendants' reply exceeded the page limit, they also concurrently filed an unopposed motion to exceed the page limit.

1   Primarily because the Ninth Circuit Court of Appeals and the Nevada Supreme Court have
2   effectively foreclosed the arguments Principal Defendants raise in their Motion—but as
3   further explained below—the Court will deny the Motion.

4   **II.     RELEVANT BACKGROUND**

5          The Court incorporates by reference the factual and procedural background of this
6   long-running sub-file provided in the *Remand Order*. *See* 986 F.3d at 1199-1203. But the
7   Court nonetheless briefly explains the posture of this proceeding, some pertinent elements
8   of the most recent appellate proceedings, and the allegations in Mineral County's SACI.

9          **A.     Procedural Posture**

10         As noted, this case is a 'sub-file' of the long-running proceedings regarding the
11   adjudication of the water of the Walker River that focuses specifically on Mineral County's
12   efforts to intervene in the interest of more water flowing into Walker Lake. (ECF No. 814
13   at 1.) *See also Min. Cnty. v. Walker River Irrigation Dist.*, 900 F.3d 1027, 1029-30 (9th Cir.
14   2018) ("*Certification Order*"), *certified question answered sub nom. Min. Cnty. v. Lyon*
15   *Cnty.*, 473 P.3d 418 (Nev. 2020) ("*Answer Opinion*"). The Court oversees the Walker River
16   Decree (the "Decree"), and this proceeding can be viewed as a part of the Court's ongoing
17   supervision under the Decree. *See Certification Order*, 900 F.3d at 1029-30.

18         Mineral County moved to intervene in 1994, and the Honorable District Judge
19   Robert C. Jones granted Mineral County's motion to intervene in 2013 after Mineral
20   County spent years perfecting service of the many water rightsholders party to the Decree.
21   *See id.* at 1030. But then Judge Jones dismissed Mineral County's Amended Complaint
22   in Intervention ("ACI") in 2015. (ECF No. 814 at 1-2, 20 ("Dismissal Order").) Mineral
23   County appealed, the Ninth Circuit ultimately vacated Judge Jones' Dismissal Order in

24

25

26   (ECF No. 1059.) Good cause appearing, the Court grants that motion. (*See also* ECF Nos.
     1040, 1052 (permitting extra pages for both the Motion and the response).) The Court
27   reviewed and considered Principal Defendants' reply as filed. In addition, Mineral County
     requested oral argument on the Motion (ECF No. 1051 at 1), but the Court declines to hold
28   oral argument because it finds oral argument unnecessary. *See* LR 78-1 ("All motions may
     be considered and decided with or without a hearing.").

1   part after certifying questions to the Nevada Supreme Court and receiving a response,

2   *see Remand Order*, and this proceeding was reassigned to the Court (ECF No. 887).

3          Per the *Remand Order*, the Court permitted this sub-file to proceed "only to the

4   extent necessary to permit Mineral County to 'pursue its public trust claim to the extent

5   that the County seeks remedies that would not involve a reallocation of' [...] 'water rights

6   adjudicated under the Decree and settled under the doctrine of prior appropriation.'" (ECF

7   No. 907.) To that end, Mineral County filed the SACI. (ECF No. 936.) Principal Defendants

8   now move to dismiss the SACI. (ECF No. 996.)

9          **B.     Appellate Proceedings**

10         However, the Court is not considering the SACI and the Motion in a vacuum.

11  Certain elements of the four appellate decisions issued as to this sub-file since Judge

12  Jones issued the Dismissal Order—along with prior appellate decisions regarding the

13  Walker River—are pertinent to the arguments Principal Defendants raise in their Motion.

14  The Court accordingly summarizes some of those elements here.

15         First, the Ninth Circuit held that Mineral County had standing based on the

16  allegations in the ACI in an unpublished memorandum disposition filed concurrently with

17  its *Certification Order*.  *See Mono Cnty. v. Walker River Irrigation Dist.*, 735 F. App'x 271

18  (9th Cir. 2018) ("*Standing Order*"). In pertinent part, the Ninth Circuit rejected in the

19  *Standing Order* WRID's argument that, "even if the public trust doctrine applies, this court

20  (or the Nevada Supreme Court) cannot order the Nevada legislature to amend Nevada's

21  water laws, and the legislature would be unlikely to do so." *Id.* at 274.

22         Second, the Ninth Circuit held in a related appeal that Walker Lake is within the

23  Walker River basin. *See United States v. United States Bd. of Water Commissioners*, 893

24  F.3d 578, 604-06 (9th Cir. 2018). In reaching this conclusion, the Ninth Circuit mentioned

25  that "the Nevada Supreme Court views the Lake as part of the Walker River system and

26  subject to the Decree court's jurisdiction[,]" *id.* at 605 (footnote omitted), further noting that

27  this Court (in the past) and Congress' understanding was consistent with the Nevada

28  Supreme Court's, *see id.*

1    Third, the Ninth Circuit certified two questions to the Nevada Supreme Court in the

2    appeal of Judge Jones' Dismissal Order regarding "whether, and to what extent, the public

3    trust doctrine applies to appropriative rights settled under the Walker River Decree[.]"

4    *Certification Order*, 900 F.3d at 1034.

5    Fourth, the Nevada Supreme Court answered the first certified question, but

6    declined to answer the second, holding that the public trust doctrine applies to rights

7    already adjudicated and settled under the doctrine of prior appropriation, and applies to all

8    waters within the state of Nevada (whether navigable or not), but that the public trust

9    doctrine does not permit reallocating water rights already adjudicated and settled under

10   the doctrine of prior appropriation. *See generally Answer Opinion*, 473 P.3d 418. The

11   Nevada Supreme Court further held that Nevada's water-rights regulatory framework

12   already satisfied the public trust doctrine. *See id.* at 426-31. Thus, the Nevada Supreme

13   Court accepted the tragic decline of Walker Lake but held it "cannot use the public trust

14   doctrine as a tool to uproot an entire water system, particularly where finality is firmly

15   rooted in our statutes." *Id.* at 430. And the Nevada Supreme Court accordingly concluded

16   the Decree could not be reopened to allow more water to flow into Walker Lake. *See id.*

17   Further, and as pertinent to the discussion below, the Nevada Supreme Court noted, "[t]he

18   [Walker River] Basin does not appear able to meet the county's needs without abrogating

19   the rights of more senior right holders." *Id.* at 430 n.8. "The county's request would

20   therefore require reallocating water rights." *Id.* And the Nevada Supreme Court predicted

21   the Ninth Circuit would agree with that conclusion, relying on the *Certification Order*. *See*

22   *id.*

23   However, and fifth, the Ninth Circuit did not. Instead, in the *Remand Order*, the

24   Ninth Circuit agreed with Mineral County that the *Answer Opinion* does not foreclose

25   Mineral County "from seeking remedies under the public trust doctrine that do not require

26   a reallocation of adjudicated water rights." *Remand Order*, 986 F.3d at 1205. According to

27   the Ninth Circuit, this was because, while it acknowledged the Nevada Supreme Court's

28   conclusion described immediately above, the Nevada Supreme Court "did not consider

4

1    whether other remedies were viable." *Id.* Thus, the Ninth Circuit remanded this sub-file to

2    the Court with instructions that Mineral County, "may pursue its public trust claim to the

3    extent that the County seeks remedies that would *not* involve a reallocation of such

4    rights."[3] *Id.* at 1206 (emphasis in original).

5         **C.    Allegations in SACI**

6         And as noted, that is what Mineral County is attempting to do in the SACI. The

7    following summary of the allegations therein is adapted from the SACI. Mineral County

8    seeks to enforce the Court and the State of Nevada's public trust duty to maintain minimum

9    flows in the Walker River such that Walker Lake again becomes a viable put-grow-and-

10   take Lahontan cutthroat trout fishery. (ECF No. 936 at 2.) Mineral County alleges the Court

11   has jurisdiction over its claims (but as explained below, Principal Defendants challenge

12   each of these alleged bases of jurisdiction). (*Id.* at 3-4; *see also* ECF No. 996 at 14-20.)

13        Mineral County further alleges that the main source of water into Walker Lake is

14   the Walker River. (ECF No. 936 at 4.) While the lake historically supported various types

15   of fish and other life, upstream appropriators took so much water over the course of the

16   twentieth century that the lake is no longer a viable home for fish. (*Id.* at 4-6.) This has

17   harmed Mineral County's tax base and economy because fishing in Walker Lake was a

18   major source of economic activity within the county. (*Id.* at 6.)

19        Mineral County accordingly seeks various types of relief under the public trust

20   doctrine in 24 enumerated paragraphs, seeking different relief in each one. (*Id.* at 8-11.)

21   While the Court will discuss the requested relief in more detail in the discussion section of

22   this order, the Court notes for now that, generally speaking, all 24 of the different types of

23   relief Mineral County seeks share the common attribute that they would allow more water

24   to flow through the Walker River all the way to Walker Lake. (*Id.*)

25   ///

26

27   _____

28        [3]But the Ninth Circuit also held that the Court could not reopen the Decree to afford Mineral County the relief it seeks because it had been much too long since the Decree was entered. *See Remand Order*, 986 F.3d at 1204.

## III.   LEGAL STANDARDS

Principal Defendants alternatively move to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), or 12(b)(7). (ECF No. 996 at 14-26, 26-30, 31-36.) The Court thus briefly recites the legal standard applicable to each rule.

### A.   12(b)(1)

Federal courts are courts of limited jurisdiction. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *See Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Fed. R. Civ. P. 12(b)(1) allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *See McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (*citing McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). "Because subject matter jurisdiction goes to the power of the court to hear a case, it is a threshold issue and may be raised at any time and by any party." *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004) (citing Fed. R. Civ. P. 12(b)(1)).

### B.   12(b)(6)

A court may also dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a

6

1   claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

2   U.S. at 570).

3       In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to

4   apply when considering motions to dismiss. First, a district court must accept as true all

5   well-pleaded factual allegations in the complaint; however, legal conclusions are not

6   entitled to the assumption of truth. *See id.* at 678. Mere recitals of the elements of a cause

7   of action, supported only by conclusory statements, do not suffice. *See id.* Second, a

8   district court must consider whether the factual allegations in the complaint allege a

9   plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's

10  complaint alleges facts that allow a court to draw a reasonable inference that the

11  defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does

12  not permit the Court to infer more than the mere possibility of misconduct, the complaint

13  has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679

14  (alteration in original) (internal quotation marks and citation omitted). That is insufficient.

15  When the claims in a complaint have not crossed the line from conceivable to plausible,

16  the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

17      **C.    12(b)(7)**

18      Fed. R. Civ. P. 12(b)(7) allows defendants to seek dismissal of a claim or action for

19  failure to join a party under Rule 19. *See id.* And "[t]hat rule requires the Court look to Rule

20  19, which provides that a necessary party is one who is necessary for the Court to accord

21  complete relief between the parties, claims an interest in the relief sought by the parties,

22  or who is situated such that not joining them would substantially impair their or an existing

23  party's interest." *Fair Maps Nevada v. Cegavske*, 463 F. Supp. 3d 1123, 1139 (D. Nev.

24  2020) (citing Fed. R. Civ. P. 19(a)(1)). "If the absent party is 'necessary,' the court must

25  determine whether joinder is 'feasible.'" *United States v. Bowen*, 172 F.3d 682, 688 (9th

26  Cir. 1999) (citing Fed. R. Civ. P. 19(a) & (b)). "Finally, if joinder is not 'feasible,' the court

27  must decide whether the absent party is 'indispensable,' *i.e.,* whether in 'equity and good

28  conscience' the action can continue without the party." *Id.* (citing Fed. R. Civ. P. 19(b)). If

1   the Court determines that the action should not proceed in the absence of a necessary

2   party who cannot be joined, the Court may dismiss the case. *See* Fed. R. Civ. P. 19(b).

3   **IV.   DISCUSSION**

4          As noted, Principal Defendants alternatively move to dismiss under Federal Rules

5   of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7) for lack of subject-matter jurisdiction,

6   failure to state a claim, and failure to join a necessary party, respectively. (ECF No. 996 at

7   14-36.) While the Court ultimately finds none of Principal Defendants' arguments

8   persuasive, the Court will address each argument in turn.[4]

9          **A.     Subject-Matter Jurisdiction**

10          Principal Defendants argue that the Court lacks subject-matter jurisdiction over the

11   SACI for the alternative reasons that Paragraph 14 of the Decree does not give the Court

12   jurisdiction over it, and therefore the Court does not have supplemental jurisdiction over

13   the SACI or jurisdiction under the All Writs Act, and that Mineral County lacks Article III

14   standing in any event. (ECF No. 996 at 14-20.) Principal Defendants alternatively argue

15   that the claims in Mineral County's SACI are barred under the political question doctrine.

16   (*Id.* at 20-26.) Mineral County primarily counters that these arguments are foreclosed by

17   prior appellate decisions in this and related cases. (ECF No. 1051 at 15-17, 25-32.) The

18   Court agrees with Mineral County, though it addresses the Principal Defendants' three

19   primary arguments separately.[5]

20   ///

21

22   _____

23          [4]In reply, Principal Defendants rely on the 'mandate rule' to argue that the *Remand Order* does not preclude consideration of the issues they raise in their Motion. (ECF No. 1060 at 5-6.) The Court agrees with the Principal Defendants to the extent that it considers

24   most of Principal Defendants' arguments in this order but disagrees to the extent that the reasoning in the *Remand Order* and other appellate orders renders Principal Defendants'

25   arguments unpersuasive. Said otherwise, the Court affirmatively rejects Principal Defendants' arguments in their Motion herein; it does not find it cannot consider them.

26          [5]The Court addresses standing and the political question doctrine within this section

27   on subject matter jurisdiction because the Ninth Circuit has held that both doctrines are jurisdictional. *See Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 815 (9th Cir. 2017)

28   ("Lack of standing deprives this court of Article III jurisdiction, and the presence of a political question likewise deprives this court of jurisdiction[.]") (citations omitted).

1

### 1.    The Court's Jurisdiction Over Mineral County's Claims

2     Principal Defendants more specifically argue that the Court lacks subject-matter

3   jurisdiction over the SACI under Paragraph 14 of the Decree because Mineral County

4   does not seek any modifications of the Decree or the rights recognized therein in the SACI.

5   (ECF No. 996 at 14-15.) Mineral County responds that Principal Defendants' view of the

6   Court's continuing jurisdiction under Paragraph 14 of the Decree is too narrow, particularly

7   considering the Ninth Circuit's opinion in *United States v. Walker River Irrigation Dist.*, 890

8   F.3d 1161, 1169-72 (9th Cir. 2018) ("*Tribe's Counterclaims Opinion*"), WRID's own

9   arguments in prior proceedings regarding the Walker River, and the consistent

10   acknowledgement of the Court's exclusive jurisdiction over the Walker River and the

11   Decree across courts since around 1910. (ECF No. 1051 at 15-22.) As noted, the Court

12   agrees with Mineral County.[6]

13     While the *Tribe's Counterclaims Opinion* arose out of a different Walker River

14   Decree sub-file, the Court finds it establishes that the Court has jurisdiction to entertain

15   Mineral County's claims as alleged in the SACI under Paragraph 14 of the Decree. In the

16   *Tribe's Counterclaims Opinion*, the Ninth Circuit construed Paragraph 14 of the Decree.

17   See 890 F.3d at 1169-72. Like the Ninth Circuit, the Court quotes Paragraph 14 here for

18   reference: "[t]he Court retains jurisdiction of this cause for the purpose of changing the

19   duty of water or for correcting or modifying this decree; also for regulatory purposes,

20   including a change of the place of use of any water user...." *Id.* at 1169. The Ninth Circuit

21   affirmed Judge Jones' view that "'modify' in this clause allows the court to adjudicate yet-

22   unlitigated water rights." *Id.* The Ninth Circuit further found that 'modify' gave the court

23   broad power to equitably oversee allocation of the waters of the Walker River. *See id.* at

24

25

26   _____

27     [6]Because, as further explained below, the Court alternatively finds it has jurisdiction
to entertain Mineral County's claims in the SACI under either Paragraph 14 of the Decree
or its continuing exclusive jurisdiction over the Walker River, the Court need not—and
28   does not—address Principal Defendants' arguments as to supplemental jurisdiction, the
All Writs Act, and arising under jurisdiction. (ECF No. 996 at 16-17.)

1170. Moreover, the Ninth Circuit noted, "[t]here is no obvious limitation on the retention of jurisdiction 'for regulatory purposes.'" *Id.*

This all supports Mineral County's view that the Court has jurisdiction to entertain its claims under Paragraph 14 of the Decree. The Ninth Circuit was clear in the *Tribe's Counterclaims Opinion* that the Court has jurisdiction under Paragraph 14 to adjudicate yet-unlitigated water rights. *See id.* at 1169-70. And the Court construes Mineral County's claims in the SACI as claims for yet-unlitigated water rights because the various forms of relief Mineral County seeks would all have the effect of allowing more water to flow into Walker Lake. (ECF No. 936 at 8-11.) Indeed, facilitating the increased flow of water into Walker Lake is the stated purpose of the SACI. (*Id.* at 2.) Further, per the *Remand Order*, Mineral County cannot re-open the Decree, so the rights it seeks in the SACI must be unlitigated. *See* 986 F.3d at 1204. And while Mineral County attempted to initiate this sub-file in the 1990s, this sub-file is still in its very early stages—Mineral County's claims have not yet been litigated.

Principal Defendants' conclusory argument to the contrary is unpersuasive. (ECF Nos. 996 at 14-15, 1060 at 7.) Indeed, Principal Defendants' argument lacks citation to legal authority and does not even refer to the allegations contained in the SACI. (ECF No. 996 at 15.) Principal Defendants' only pertinent argument that relies on legal authority relies on that authority to argue that Mineral County's claims in the SACI are like the situation where a party has brought a new action or filed a new pleading in a concluded action, alleging its claims are related to the concluded action.[7] (*Id.*) But that is not what

---

[7]Moreover, the Court notes that Judge Jones addressed and rejected this same argument when WRID previously raised it in the 127 sub-file. *See United States v. Walker River Irr. Dist.*, Case No. 3:73-cv-00127-RCJ, 2015 WL 3439106, at *5 (D. Nev. May 28, 2015) ("WRID analogizes the present counterclaims to a situation where a party seeks to reopen a closed action in order to bring what amounts to a new action or supplementation of an adjudicated complaint."). And while the Ninth Circuit vacated that order in part, the Ninth Circuit affirmed Judge Jones' decision that this Court had jurisdiction over the Walker River Paiute Tribe's counterclaims under Paragraph 14. *See Tribe's Counterclaims Opinion*, 890 F.3d at 1169 ("the district court had jurisdiction over the counterclaims"). As WRID is one of the Principal Defendants, WRID is again raising an argument it has already lost.

1    Mineral County is doing here—it was granted leave to intervene in an ongoing proceeding.

2    *See supra*. Indeed, it would likely be error to conclude that this sub-file regarding Mineral

3    County's claims is a new action, as Principal Defendants suggest through their

4    unpersuasive analogy. *See Tribe's Counterclaim Opinion*, 890 F.3d at 1172 (finding Judge

5    Jones erred when he construed the Walker River Paiute Tribe's counterclaims as

6    constituting a new action). Principal Defendants' argument that Paragraph 14 does not

7    give the Court jurisdiction over the SACI is accordingly unpersuasive.

8         And Principal Defendants do not even engage with "for regulatory purposes," to

9    which the Ninth Circuit noted, "[t]here is no obvious limitation on the retention of jurisdiction

10   'for regulatory purposes.'" *Id.*  at 1170. While in plain English regulatory purposes could

11   mean something like for purposes of regulatory compliance, *e.g.* reports that must be filed

12   pursuant to some law or regulation, in the context of Paragraph 14 it means regulation of

13   water, because it is immediately followed after a comma by the subclause, "including a

14   change of the place of use of any water user[,]" and that subclause is within the same

15   clause as "for regulatory purposes," as indicated by the position of the semi-colon right

16   before 'also.' *See id.* at 1169 (including the fuller quotation). The Court thus has some

17   residual retained jurisdiction to regulate the flow of water in the Walker River "for regulatory

18   purposes." And the SACI ultimately asks the Court to ensure more water flows all the way

19   through the Walker River into Walker Lake. This clause within Paragraph 14 accordingly

20   gives the Court an alternative basis for its jurisdiction over the SACI beyond the word

21   'modify.'

22        Further, and as Mineral County also argues, a consensus has existed for over 100

23   years among pertinent courts that the Court has exclusive jurisdiction over disputes

24   regarding the water of the Walker River. (ECF No. 1051 at 17-20.) The Supreme Court

25   held as much in 1910. *See Rickey Land & Cattle Co. v. Miller & Lux*, 218 U.S. 258, 262

26

27

28

(1910).[8] The Nevada Supreme Court also held that this Court has prior exclusive jurisdiction over the waters of the Walker River in 2001. *See Min. Cnty. v. State, Dep't of Conservation & Nat. Res.*, 20 P.3d 800, 806-07 (Nev. 2001). Indeed, in that case, the Nevada Supreme Court held that Mineral County could not obtain essentially the relief it seeks in this sub-file, instead forcing Mineral County to obtain any such relief in this sub-file. *See id.* And the Ninth Circuit explicitly indicated to the Court that Mineral County could "pursue its public trust claim [in this Court] to the extent that the County seeks remedies that would *not* involve a reallocation of such rights." *Remand Order*, 986 F.3d at 1206 (emphasis in original). Thus, all pertinent appellate courts appear to agree that this Court is the best court to adjudicate Mineral County's claims. It would accordingly be odd if the Court found it lacked jurisdiction over Mineral County's claims.

Indeed, even WRID has successfully argued in the past that the Court has exclusive jurisdiction over the Walker River, contrary to the jurisdictional argument it makes here as a member of the Principal Defendants group. *See United States v. Walker River Irrigation District*, Case No. 3:73-cv-00126-ECR-RAM, ECF No. 3 at 2 (Jan. 9, 1991) ("this Court acquired jurisdiction over the waters of the Walker River and its tributaries in California and Nevada."). WRID was successful in that proceeding because it ended in a stipulated settlement that gave WRID essentially the relief it was seeking. *See id.*, ECF No. 92. However, the stipulation contained a provision arguably specifying that WRID could take the position it takes now. *See also id.*, ECF No 92 at 25 (¶20). Regardless, WRID intervened in the proceedings culminating in *Min. Cnty.*, 20 P.3d 800, where the Nevada

---

[8]Principal Defendants rely on the lower court decision that ultimately culminated in this Supreme Court opinion in reply for the proposition that this Court does not have jurisdiction over the Walker River in California. (ECF No. 1060 at 8 (citing *Miller & Lux v. Rickey*, 127 F. 573, 575 (C.C.D. Nev. 1904).) However, the Supreme Court effectively awarded this Court jurisdiction over disputes regarding the Walker River after acknowledging the concurrent jurisdiction of courts in California and Nevada as the "court first seised[.]" *Rickey Land & Cattle Co.*, 218 U.S. at 262. Thus, Principal Defendants' statement that the "Court could not have assumed such jurisdiction over the Walker River in California because it is outside the boundaries of the District of Nevada" (ECF No. 1060 at 8) is incorrect in light of *Rickey Land & Cattle Co.*, 218 U.S. at 262.

1    Supreme Court concluded this Court had prior exclusive jurisdiction over the Walker

2    River—a finding in line with the position WRID espoused in that case.

3         In sum, the Court has jurisdiction over Mineral County's claims in the SACI from at

4    least two different places in Paragraph 14 of the Decree, as well as because the Court

5    has exclusive jurisdiction over disputes regarding the water of the Walker River.

6                      **2.    Standing**

7         Principal Defendants alternatively argue Mineral County lacks Article III standing

8    because, apparently contrary to the Ninth Circuit's assumption in the *Remand Order*, some

9    of the relief Mineral County seeks in the SACI would require the Nevada Legislature to

10   act. (ECF No. 996 at 17-20.) Principal Defendants further argue, in gist, that Mineral

11   County's claims are not ultimately redressable because Walker Lake cannot feasibly be

12   returned to the level that would support a healthy Lahontan cutthroat trout fishery like

13   Mineral County wants. (ECF No. 996 at 17-20.) Mineral County responds that it need not

14   show its claims are entirely redressable to satisfy the redressability requirement of the

15   standing inquiry, and otherwise argues that the Ninth Circuit's recent decisions regarding

16   standing in this sub-file effectively foreclose Principal Defendants' standing arguments.

17   (ECF No. 1051 at 24-28.) The Court again agrees with Mineral County.

18        To start, not enough has changed from the ACI to the SACI for the Court to

19   conclude Mineral County lacks standing to pursue the claim in the SACI when the Ninth

20   Circuit relatively recently concluded Mineral County had standing to proceed on the ACI.

21   In the *Certification Order*, the Ninth Circuit, "concluded the district court erred in dismissing

22   the amended complaint in intervention for lack of standing." 900 F.3d at 1030 (footnote

23   omitted). And the Ninth Circuit explained in a footnote, *see id.* n.4, that it concurrently

24   issued the *Standing Order* to explain its reasoning. There, as particularly pertinent to

25   Principal Defendants' redressability argument,[9] the Ninth Circuit held, "Mineral County's

26

27        ───────────────

     [9]Principal Defendants assumed for the sake of argument that Mineral County
28   satisfied the first two prongs of the standing analysis, so the Court does not explicitly
     address those prongs here. (ECF No. 996 at 18.) But for avoidance of doubt, the Ninth

1   requested relief—flows adequate to restore the water level and quality in Walker Lake –

2   would likely redress its injuries." 735 F. App'x at 274. Indeed, the Ninth Circuit rejected the

3   primary argument Principal Defendants again raise in their Motion, that the Court "cannot

4   order the Nevada legislature to amend Nevada's water laws, and the legislature would be

5   unlikely to do so." *Id.* The Ninth Circuit instead found that it is at least plausible that the

6   Court could order state officials to reserve necessary flows of water to uphold the public

7   trust to Walker Lake, without requiring the State Legislature to act. *See id.*

8       "Under the law of the case doctrine, 'a court is generally precluded from

9   reconsidering an issue previously decided by the same court, or a higher court in the

10   identical case." *Ingle v. Cir. City*, 408 F.3d 592, 594 (9th Cir. 2005) (citation omitted). The

11   pertinent exceptions to this rule account for new evidence or changed circumstances on

12   remand, *see id.*, but nothing has changed from the ACI to the SACI that would render the

13   Ninth Circuit's decision that Mineral County has standing inapplicable here. The one

14   purported change that Principal Defendants point to is both a regurgitation of the same

15   argument the Ninth Circuit already rejected and not entirely accurate in any event. (ECF

16   No. 996 at 17-20 (arguing in pertinent part that the relief Mineral County seeks in the SACI

17   would require the Nevada Legislature to act).) But not all of Mineral County's requested

18   relief would require the Nevada Legislature to act. (ECF No. 936 at 8-11 (including, for

19   example, requested relief including a declaration that the Court and Nevada have violated

20   the public trust doctrine, amending 1953 and 1996 rules and regulations applicable to the

21   Decree, etc.).) Thus, even if the Court could rule differently than the Ninth Circuit recently

22   did—and the Court cannot under the law of the case doctrine—the Court sees no reason

23   to.

24       Moreover, the Ninth Circuit effectively warned the Court not to dismiss this case for

25   lack of standing without further factual development. The Ninth Circuit did so in two ways.

26   First, the Ninth Circuit found Judge Jones erred in dismissing this case for lack of standing.

27

28   Circuit found that the first two prongs of the standing analysis are satisfied for the reasons
     the Ninth Circuit specified. *See Standing Order*, 735 Fed. App'x at 273-74.

1    And the elements of the ACI that led the Ninth Circuit to conclude Mineral County has

2    standing are present in the SACI as well. Second, the Ninth Circuit quoted discussion from

3    the Wright and Miller treatise of the "risk that standing will be denied because hasty

4    remedial determinations made at a preliminary stage do not reflect the full inventiveness

5    that could be exhibited after trial[.]" *Standing Order*, 735 F. App'x at 274 (citations and

6    punctuation omitted). No factual development—much less trial—has occurred in this case

7    since the Ninth Circuit cited this discussion in 2018. Thus, the risk the Ninth Circuit

8    mentioned is just as present now as it was then. Said otherwise, while it is the Court's

9    responsibility to evaluate whether it has subject matter jurisdiction throughout a case, the

10   Court cannot help but note that the Ninth Circuit essentially warned the Court not to

11   dismiss this sub-file for lack of standing in addition to rejecting the same standing

12   argument Principal Defendants raise in their motion.

13       Principal Defendants also argue that the Nevada Supreme Court's *Answer Opinion*

14   materially altered the standing analysis, but the Court disagrees. (ECF No. 996 at 17.)

15   Indeed, in the *Remand Order*, which obviously postdates the *Answer Opinion*, the Ninth

16   Circuit simply mentioned that it had already found Mineral County had standing, and then

17   proceeded to remand to this Court so that Mineral County could pursue its public trust

18   doctrine claim to the extent it did not involve a reallocation of rights already settled under

19   the Decree. *See* 986 F.3d 1197, 1206.

20       Principal Defendants finally argue this case is like *Juliana v. United States*, 947 F3d

21   1159 (9th Cir. 2020), where the Ninth Circuit dismissed for lack of standing a case

22   attempting to require the federal government to do more to limit and mitigate the worst

23   effects of climate change, and thus this case should be dismissed as well. (ECF No. 996

24   at 18.) But upon closer examination, Principal Defendants' arguments based on *Juliana*

25   are really arguments that: Mineral County's claims are not redressable because Walker

26   Lake can never be sufficiently rehabilitated to support a viable fishery; and some of Mineral

27   County's requested relief is beyond the power of this Court to grant. (*Id.* at 19-20.) The

28   latter portion of this argument bleeds into Principal Defendants' political question

argument, so the Court will address it in the next section. As to the former argument, and as Mineral County counters, it is simply unpersuasive as a matter of law. (ECF No. 1051 at 24-28.) Even if the Court can afford partial relief—order that something happen that would allow some more water to reach Walker Lake—Mineral County's claims are redressable for purposes of the standing inquiry. *See, e.g.*, *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) ("the ability 'to effectuate a partial remedy' satisfies the redressability requirement."). And the Court cannot say on the present record that it will be unable to award Mineral County any of the relief it seeks.

The Court accordingly finds that Mineral County has Article III standing to proceed on the claims it rases in the SACI.

### 3.    Political Question

Principal Defendants further argue Mineral County's claim in the SACI presents political questions that the Court should decline to answer. (ECF No. 996 at 20-26.) Mineral County counters that Principal Defendants already lost this argument before the Ninth Circuit and the Nevada Supreme Court and the public trust doctrine is judicial in nature in any event. (ECF No. 1051 at 28-32.) The Court again agrees with Mineral County.

Principal Defendants' political question argument is unpersuasive because it emphasizes Judge Jones' Dismissal Order and the Nevada Supreme Court's *Answer Opinion* while ignoring the Ninth Circuit's *Remand Order*. And the Court is bound by the Ninth Circuit's rulings in the *Remand Order*. In the *Remand Order*, the Ninth Circuit vacated Judge Jones' Dismissal Order where he invoked the "political question doctrine[,]" 986 F.3d at 1202, and remanded to this Court to consider Mineral County's public trust claim to the extent it did not involve reallocation of water rights already settled in the Decree. *See id.* at 1206. If the Ninth Circuit agreed the political question doctrine precluded Mineral County's claims, it would not have vacated Judge Jones' Dismissal Order, nor would it have remanded so this case could proceed. That is because the Ninth Circuit considers the political question doctrine jurisdictional, *see Ctr. for Biological Diversity*, 868

1   F.3d at 815, so, contrary to Principal Defendants' argument (ECF No. 1060 at 13-16), the
2   Ninth Circuit would have affirmed Judge Jones' Dismissal Order or otherwise dismissed
3   this case if it agreed the political question doctrine applied. In addition, the Ninth Circuit
4   rejected in the *Standing Order* WRID's argument that, "even if the public trust doctrine
5   applies, this court (or the Nevada Supreme Court) cannot order the Nevada legislature to
6   amend Nevada's water laws, and the legislature would be unlikely to do so." 735 F. App'x
7   at 274.

8         Principal Defendants' argument also focuses on the Nevada Supreme Court's
9   holding in the *Answer Opinion* that Nevada's existing water rights regulatory framework
10  complies with the public trust doctrine but again ignores the *Remand Order*, where the
11  Ninth Circuit found the *Answer Opinion* does not end Mineral County's case. (ECF No.
12  996 at 23-26 (relying in pertinent part on the *Answer Opinion*).) *See also Remand Order*,
13  986 F.3d at 1203 (agreeing in pertinent part that Mineral County's case is not over). Thus,
14  the *Remand Order* forecloses Principal Defendants' political question doctrine argument,
15  especially when considered in light of the *Standing Order*.

16        More simply, the Court does not find that the political question doctrine bars Mineral
17  County's claims in the SACI. Mineral County is asking the Court to interpret and enforce
18  a judicially-created doctrine. And the Court has been exercising equitable jurisdiction over
19  the Walker River for over 100 years, which has required it to answer innumerable
20  questions like the hard questions embedded in SACI. Moreover, in the *Answer Opinion*,
21  the Nevada Supreme Court held that the public trust doctrine, "applies to all waters in the
22  state and the lands submerged beneath navigable water," 473 P.3d at 426, building upon
23  its prior holding that property subject to the public trust doctrine, "is subject to judicial
24  review." *Lawrence v. Clark Cnty.*, 254 P.3d 606, 613 (Nev. 2011). Both of these holdings
25  further suggest that the Court should allow this sub-file to proceed towards a merits phase
26  instead of dismissing it now based on the political question doctrine. And to reiterate, the
27  Ninth Circuit found in the *Remand Order* that the *Answer Opinion* did not end this case.
28  ///

17

Finally, Principal Defendants again focus on some specific types of relief that Mineral County seeks in the SACI to argue that Mineral County wants the Court to order the State of Nevada to take certain actions properly within the Legislature's domain. (ECF No. 996 at 23-24.) But Principal Defendants' argument is unpersuasive because it ignores the other types of relief Mineral County seeks in the SACI, which would not require the Court to order the State of Nevada to do anything or otherwise necessarily require legislative action. (ECF No. 936 at 8-11 (seeking at least 23 different types of relief).)

In sum, the Court declines to dismiss this sub-file at this juncture based on the political question doctrine.

**B.    Necessary Party**

Principal Defendants also argue the Court should dismiss the SACI because Mineral County has failed to join a necessary party—the State of Nevada—and cannot because such claims are barred by the Eleventh Amendment. (ECF Nos. 996 at 26-30, 1060 at 16-17.) Mineral County responds that the State of Nevada is already effectively a party to these proceedings through the Decree and two of its agencies: the State Engineer and NDOW, who even joined the Motion represented by the Nevada Attorney General's office. (ECF No. 1051 at 32-34.) The Court again agrees with Mineral County.

The Court finds it easy to knock down this unpersuasive straw man constructed by Principal Defendants. The State Engineer and NDOW have participated in the Decree litigation for decades. The Court has jurisdiction over them when it comes to the water in the Walker River. Said otherwise, for the reasons Mineral County provides in response to the Motion (*id.*), the Court rejects Principal Defendants' necessary party argument.

**C.    Failure to State a Claim**

Principal Defendants finally argue the Court should dismiss the SACI because Mineral County fails to state a claim therein. (ECF Nos. 996 at 31-36, 1060 at 17-20.) This argument has several subcomponents. Principal Defendants first argue the public trust doctrine does not apply because Nevada has not disposed of Walker Lake. (ECF No. 996 at 31-32.) Principal Defendants next argue that the public trust doctrine cannot impose a

duty to require additional inflows to Walker Lake because the Nevada Supreme Court found Nevada's comprehensive water regulation scheme already complied with the public trust doctrine in the *Answer Opinion*. (*Id.* at 32-35.) Finally, Principal Defendants argue that the public trust doctrine cannot compel the State of Nevada to act to protect Walker Lake because the Nevada Supreme Court held in the *Answer Opinion* that the public trust doctrine generally acts as a restraint on state power, not an affirmative duty to do anything. (*Id.* at 36.)

In gist, Mineral County counters that Principal Defendants misunderstand the *Answer Opinion* and fail to take the *Remand Order* into account in their failure to state a claim arguments. (ECF No. 1051 at 35-39.) Mineral County also affirmatively argues that the public trust doctrine inheres in Nevada law and applies to Walker Lake along with the rest of the water in the Walker River Basin. (*Id.*) Mineral County goes so far as to argue that the public trust doctrine has been violated as to Walker Lake and states that the only question is what remedies are appropriate. (*Id.*) The Court again agrees with Mineral County in pertinent part.

To the detriment of their persuasive force, Principal Defendants' failure to state a claim arguments again fail to account for the *Remand Order*. First, the Ninth Circuit held that Mineral County's "public trust claim remains viable because the County can seek remedies that would *not* involve a reallocation of adjudicated water rights." 986 F.3d at 1204. Thus, Principal Defendants' argument that the public trust doctrine does not apply to Walker Lake is a nonstarter. *See also id.* at 1202 ("In a related appeal, we also held that Walker Lake is part of the Walker River Basin.") (citing *U.S. Bd. of Water Comm'rs*, 893 F.3d at 606). Second, the holding of the *Answer Opinion* that Nevada's comprehensive water regulation scheme already complies with the public trust doctrine does not necessarily foreclose the possibility that the Court could grant Mineral County equitable relief under the public trust doctrine because the Ninth Circuit held that the Court could, provided it would not involve a reallocation of settled water rights. *See Remand Order*, 986 F.3d at 1204-06. As to Principal Defendants' third argument (ECF No. 996 at 36), "the

1  [Nevada Supreme Court] did not hold, as [Principal Defendants] suggest[], that the

2  doctrine acts *only* 'as a restraint on alienation of a public resource."' *Remand Order*, 986

3  F.3d at 1205 (emphasis in original). In sum, the *Remand Order* forecloses the three

4  arguments Principal Defendants' raise in the failure to state a claim section of their motion.

5          The Court will accordingly deny the Motion because it has rejected all of Principal

6  Defendants' arguments raised therein.

7  **V.      CONCLUSION**

8          The Court notes that the parties made several arguments and cited to several cases

9  not discussed above. The Court has reviewed these arguments and cases and determines

10 that they do not warrant discussion as they do not affect the outcome of the Motion.

11         It is therefore ordered that Principal Defendants' motion to dismiss (ECF Nos. 994,

12 996) is denied.

13         It is further ordered that Principal Defendants' motion for leave to file excess pages

14 (ECF No. 1059) is granted.

15         DATED THIS 5th Day of August 2022.

16

17         _____

18         MIRANDA M. DU
           CHIEF UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28